Milligan, J.,
delivered the opinion of the Court.
This bill presents one of those unfortunate family contests growing up between near relatives in the division of their ancestor’s estate, in which it often happens, the darkest features of our nature are presented. Peter Townsend, Sr.,' as the record discloses,' was the owner of a considerable estate in Sumner County, where he lived and died, consisting principally, of land and negroes. He had been twice married, and at his death, he left his widow, Lucretia, and four children surviving him. Greorge W. W., the eldest, was the issue of the first marriage, and Joseph W. H., Elizabeth H., and Peter, Jr., of the second. The father, Peter Townsend, died in March, 1825, and his son, George W. W., by his first wife, soon after, in May following, without leaving wife or children.
At the August Term of the County Court of Sumner County, 1825, letters of administration were regularly granted on his estate, to the widow, Lucretia, and John Lauderdale, who qualified according to law, and took upon themselves the duties of the trust. And at the same time, John Lauderdale and John Booker, were appointed guardians of the three surviving | children, who were, at that time, infants of tender years. Soon after, at the November Term of the Court,, a division of the slaves was ordered, by which one-fourth in value, was allotted and set apart to the widow; and about the same time, her dower in the real estate was assigned to her. The distribution of the personal estate, and partition of the lands, among the heirs, *73 did not take place until some short time afterwards, when the whole estate appears to have been wound up and settled under the administration.
But, prior to this time, in August, 1826, John Book-fer, one of the guardians of the minor children, had intermarried with the. widow, Lucretia, and as husband of the administratrix, and one of the guardians of the minor children, with John Lauderdale, his associate guardian, who was also his wife’s co-administrator, he may he presumed to have exercised a controlling influence on the estate.
But, no dissatisfaction appears, at that time, to have been manifested. The guardianship of Booker and Lawrence was wound up, as was also the administration of Lucretia and Lauderdale, and all the property, real and personal, divided among the heirs and distributees, without murmur or complaint.
The record shows that the parties all resided in the same neighborhood, in Sumner County, until about the year 1846, when they began to remove to Tipton County; and in two or three years thereafter, the whole family were settled in the latter county.
John Lauderdale, one of the guardians of the minor children, and co-administrator with the widow of Peter Townsend, Sr., died in 1848; and in June, 1858, ten years thereafter, John Booker, the husband of the widow Townsend, and associate guardian of the infant children, also died, after having first made and published his last Will and testament, which was duly proven and admitted to record, in the County Court of Tipton County.
*74 In December following, 1858, a paper purporting to be the last Will and testament of Peter Townsend, Sr., deceased, was produced, and offered for probate in tbe County Court of Sumner County; and after being duly proven by one of the subscribing witnesses, was ordered to be recorded as the last Will and testament of Peter Townsend, Sr., deceased.
This Will is copied into the record, and it appears from its provisions, that the testator, after providing for his son, George W. W., by his first wife, devised to his wife, Lucretia, the remainder of his real and personal estate, during her natural life, or widowhood, with power to lend certain slaves, and other specified articles of personal property, to the testator’s children by his second marriage. But the use and enjoyment of the slaves and chattels thus loaned, are limited to the life or widowhood of his wife; and at her death, or on her marriage, the whole of the property so loaned, is to be brought together and sold, and the proceeds equally divided among the three children by the second marriage.
There are other provisions in this Will, which we deem it unecessary to notice, further than to remark, that the testator’s wife, Lucretia, and his son, George W. W., are named as the executrix and executor of the Will.
The son, George W. W., being dead at the time the Will was propounded for probate, and the executrix declining to qualify, Peter Townsend, Jr., was appointed administrator cum testamento annexo, and gave bond as such, in the County Court of Sumner County *75 and in one month thereafter, brought this bill in the Chancery Court of Tipton County, in the double aspect of a bill for an account, if, in the opinion of the Chancellor, the probate of the Will in Sumner County was valid after so great a lapse of time; and if not, to set up the Will of Peter Townsend, Sr.,- deceased, as a “lost or spoliated Will, in the Chancery Court.”
The bill charges, that the widow, Lucretia, prior to her second marriage with John Booker, suppressed, and fraudulently concealed the Will of her first husband, Peter Townsend, Sr., deceased, and after her second marriage, the same was suppressed and fraudulently concealed by her husband, John Booker, up to his death, in 1858.
The parties in interest, were all regularly brought in by process, and join in a demurrer to the bill. The grounds of demurrer assigned, are:
1st, Want of jurisdiction, in a Court of Equity, to set up and enforce the execution of the paper exhibited in the bill as the last Will and testament of Peter Townsend, Sr., deceased.
2d, Want of jurisdiction in the County Court of Sumner County, to admit the alleged Will to probate, and to grant letters testamentary, after the lapse of thirty-four years from the death of the testator; and also, want of jurisdiction in the County Court to appoint Thomas W. Winn, administrator of Elizabeth H. Winn, in 1858, she having been dead upwards of twenty years.
Bd, Want of equity on the face of the bill, because it shows the whole estate of Peter Townsend, Sr., de *76 ceased, had been wound up and distributed more than thirty years before the filing of this bill. And,
4th, The remedy, if any, is full, adequate and complete at law.
The Chancellor overruled the demurrer, and the defendants answer, and deny the fraudulent suppression of the Will, and exact proof of its execution. Most of them deny all knowledge of its existence, until after the death of John Booker; and J. B. and W. J. Turner aver, in their answer, after first denying all fraudulent concealment of the Will, that the paper now attempted to be set up as Peter Townsend’s last Will and testament, was in the actual custody of the complainant, Peter Townsend, Jr., some years before the death of John Booker.
The facts are very voluminous, and tend to show, that shortly after the death of Peter Townsend, Sr., John Booker and John Lauderdale, were examining and assorting the old man’s papers, and they divided them into two parcels, one of which was marked “valuable” and the other “worthless.” The attention of the widow, Lucretia, was- called to the parcel marked as worthless, and she was told that she might burn, or destroy them —and Booker and Lauderdale carried off the other. She did not destroy the package pointed out to her, but, as it is- alleged, retained the possession of it for many years.
The widow is shown to be unable to read or write, but as the evidence tends to show, she placed a mark' upon the Will, by which she was enabled to recognize it; and that the complainants had knowledge of its *77 existence, some years before the death of John Booker. This fact, however, is contested, and the subsequent steps 1 in the cause render it of little value, in the present aspect of this record, to the determination of the question raised on this record.
After the testimony was taken and the cause ready for hearing before the Chancellor,, on application of the defendants’ solicitor, the following inquiries of fact were submitted to a jury, viz:
“1st, The complainants affirm that Peter Townsend, Sr., made such a last Will and testament as is alleged in the bill.
“2d, That Lucretia Townsend, before her marriage with John Booker, fraudulently concealed and suppressed said Will.
3d, That John Booker, after his marriage with Lucretia Townsend, continued fraudulently to conceal and suppress said Will.”
These several averments were formally traversed, and under the instructions of the Chancellor, tried by a jury, and found in favor of the complainants. A motion for a new trial was made and overruled, and a decree pronounced in accordance with the finding of the jury.
The Chancellor declared the execution of the Will of Peter Townsend, Sr., in 1825, to have been regular and valid, and that it was fraudulently concealed and suppressed by his widow, from the death of the testator to the time of her inter-marriage with John Booker, and afterwards by him suppressed and concealed, until the Fall of 1858, when it was discovered, and *78 shortly thereafter, duly and legally admitted to probate and record, in the County Court of Sumner County; and the complainant, Peter Townsend, Sr., lawfully appointed and qualified as administrator, with the Will annexed.
The decree also directs an account, which, as it seems, was taken, and confirmed, fixing the liability of the defendants at $51,269.88.
Under this state of facts, various -questions arc presented and pressed in argument, with much zeal and ingenuity. ne of which lies at the threshold, and upon its determination depends very greatly, the present result of this case-
By the frame of the bill, as well as its prayer, and the decree of the Chancellor, it seems to have been apprehended, if the probate of the Will in the County Court was defective, from lapse of time, or otherwise, such defects could be cured by the action of the Chancery Court. This is a mistaken apprehension. At no time has it been held, that a Court of Equity had jurisdiction of the probate of Wills. It readily holds administrators and executors to an account of the funds which came into their hands, and gives construction, and interpretation to testamentary papers, but never exercises strictly probate jurisdiction.
In England, that jurisdiction belonged to the Ecclesiastical Courts; and in an early day, in North Carolina, there being no Ecclesiastical Courts in this country, the probate of Wills wras given to the County Courts; and when this State was erected out of the territory of North Carolina, this jurisdiction, for the *79 same reason, was continued in tlie County Courts, which to this day have the exclusive jurisdiction of Wills and testaments: Burrow et al. vs. Ragland et al., 6 Hum., 481.
The County Court, as a Court of Probate, is not an inferior Court, in the technical sense of that term, as used in reference -to this subject at common law; nor is this jurisdiction special, or limited; on the contrary, it is general, original and exclusive: Brien’s Adm’r vs. Hart, 6 Hum., 131.
It is true, if a controversy arise as to the execution of the Will, it is sent to the Circuit Court for trial, but this, in no way, ousts the County Court of its jurisdiction. The Will must still be presented there for probate; and if established upon an issue of devisavit vel non, in the Circuit Court, it must be returned for registration, -and letters testamentary; and a Court of ' Chancery in 'Tennessee, has no jurisdiction over the subject, any more than it would have had in England.
What, then, was the effect of the probate in the County Court of Sumner County ? It is insisted, it was absolutely void, and being void, it was incapable of confirmation, and that the Chancellor ought to have treated it as a nullity. We do not concur in this proposition. It cannot be sustained by reason or authority. The jurisdiction of the County Courts, in matters of probate, being general, original and ' exclusive, every intendment is in favor of its jurisdiction, and the rightful exercise of it: Kilcrease’s Heirs vs. Blythe, Jr., 1 Sanders, —; Brown vs. Wright, 4 Yer., *80 57-66; Feltz vs. Clark, 4 Hum., 79; Brien’s Adm’r vs. Hart, 6 Hum., 131.
This record shows, beyond controversy, that this paper was admitted to probate, and letters testamentary were granted thereon, in the County Court of Sumner, where the testator resided at the time of his death; and that the probate was duly made in common form. (Code, sec. 2169.) The paper having been thus admitted to probate in the County Court of Sumner County, that probate must stand, until revoked or vacated by the County Court in which it was probated, or reversed by the proper appellate tribunal, upon appeal, or writ of error: 1 Meig’s Digest, secs. 48, 54, 55, and authorities there cited; and also, Johnson vs. Gaines’ Ex’rs, 1 Coldwell, 288.
The fact that more than thirty years, had elapsed since the death of the testator, and before the paper was offered for probate, can make no difference. The County Court of Sumner County having assumed jurisdiction, and admitted the paper to probate, its validity cannot be collaterally attacked and set aside in a Court of Equity.
At the common law, no definite time is prescribed within which a Will is to be proven after the death of the testator: Williams on Executors, 27. But our Statute, (Code, sec. 2220,) provides, that administration shall not be granted, after the lapse of twenty years from the death of the decedent, except to distributees, who were infants or married women at his death; and in such case, thirty years are allowed.
*81 It further provides: “But in no other case, shall letters of administration be granted, where the deceased died twenty years before application made for the same; and all letters testameatary, or of administration, granted after said period of twenty years, shall be utterly ‘void and of no effect.’ ”
It is proper to remark, that, however letters testamentary and letters of administration, differ in their meaning, in some respects, they seem to have been used as convertible terms in the Statute, at least so far as the limitation of time within which either may be granted after the death of the decedent, is concerned. The language of the Statute, is, that uall letters testamentary, or of administration, granted after the lapse of twenty years,” to any other than the excepted persons, shall be utterly void. The grant of letters testamentary and of administration, by the express terms of the Statute, are placed on the same ground, and both, we apprehend, within the mischief intended to be avoided by the Legislature. The object of which seems to have been, the quiet and repose of society; and to prevent, after the lapse of twenty years, the grant of administration, when, it might reasonably be supposed, the whole estate had passed into other hands, the parties who originally took possession of it, dead, the papers lost, and important facts necessary to a just settlement of the estate, faded from the memory of witnesses. Such circumstances, with many others, which might be readily supposed, in both cases, after the lapse of so great a length of time, would interpose, and render it difficult, if not impossible, to settle up an estate upon principles of right and justice.
*82 But, whether, on an. application in the County Court of Sumner County, to set aside the probate of this Will, or, upon an issue of devisavit vel non, made up and certified to the Circuit Court of that County, the Statute, under the facts of this case, could be successfully relied on as a bar to the issuance of letters testamentary, we do not feel called upon now to determine. It is enough to know, that the Chancery Court has no jurisdiction to set aside the probate of a Will; and it having been formally made, must stand, until revoked or vacated by the proper tribunal.
The time within which the original probate of a Will may be revoked or set aside, is not very definitely settled in the books. On a proper application made out, it may, perhaps, be set aside at any time within twenty years after the original probate is granted, and the Will propounded for re-probate, and an issue of devisavit vel non made up and tried in the Circuit Court: Gibson vs. Lane, 9 Yer., 475; Cornwell vs. Cornwell’s Ex’rs, 11 Hum., 485.
But, it is insisted, that, notwithstanding the peremptory character of the Statute, and the great lapse of time that has intervened between the death of the testator, and the probate of his Will, a Court of Chancery, under the facts of this case, has power to set up the Will, as “a lost or spoliated Will,” and decree its execution.
As a general principle, lapse of time, in the view of a Court of Equity, is no bar to relief, when such relief is prevented by fraud, until after the discovery of the fraud: Adams’ Eq., 176, mar.; J. Story’s Eq. Ip., sec. 1521, and note 2.
*83 It is also clearly laid down, as a rule of equitable cognizance, that when an act has been prevented from being done by fraud, equity will consider it exactly as if it had been done: Smart & Wife vs. Waterhouse, 10 Yer., 94; 11 Ves., 638; 14 Ves., 290; 3 Con. Rep., 537; 1 Jac. & Walk., 96; Story’s Eq., secs. 187, 256.
But, however effectual this principle may be in proper cases, it appears very plain, this record does not present, at present, a case for its application. The jurisdiction and power of a Court of Chancery, in this State, is well established, to set up a Will, where it has been lost, destroyed, or suppressed, either by accident or fraud: Buchanan et al. vs. Matlock et al., 8 Hum., 390; Brown et al. vs. Brown & Wife, 10 Yer., 48.
But such is not this case. However long the Will in question may have been lost, suppressed, or fraudulently concealed, it is now produced, proven, and recorded in the County Court of Sumner. It is set up according to all the forms of law. What more could be done, (even if it was still lost of fraudulently suppressed,) in a Court of Equity? Such a Court could, upon proof, declare its contents, and direct its execution as the Will of the testator; but in order to do that, it would certify it to the County Court of Sumner County, there to be proceeded on and under, as the last Will and testament of Peter Townsend, Sen., deceased. All this has been accomplished, and the Will stands on this record, regularly executed and proven, and will so continue, until the probate is set aside, under a proper proceeding, in the proper tribunal: Burrow et al. vs. Ragland, 6 *84 Hum., 481; Wynn’s Ex’rs vs. Spiers, 7 Hum., 394; Johnson vs. Gains’ Ex’rs, 1 Coldwell, 288.
It therefore, follows, that, as the case is presented in this record, the Chancery Court has no jurisdiction, either to set aside the probate of the Will, or to give any additional force or validity to it; and it must, for the present, at least, he treated as a valid testamentary paper, subject, however, to be re-propounded for probate, in the County Court of Sumner County.
In this view of the case, it is apparent, the issues of fact submitted to the jury, and tried by them, were wholly useless, and without any effect, whatever, in the determination of the rights of the parties upon this record.
But inasmuch as, by possibility, the issues found by the jury, may, on another application to set up this Will in a Court of Chancery, after the probate to set aside, if such should be the case, or a trial of an issue of devisavit vel non, become very important, we have felt it our duty to examine the charge of the Chancellor, under which these issues were submitted to the jury; and we are satisfied, without extending this opinion by a critical analysis of the charge, that it was not only, in its general tone and bearing, calculated to bias the mind of the jury, but, in several important particulars, positively erroneous, for which we feel constrained to set aside the verdict of the jury, and so much of the decree of the Chancellor pronounced upon it.
We are also of opinion that the Chancellor erred in overruling the defendant’s demurrer as to the first *85 cause of demurrer assigned, and that it was properly-overruled as to the other causes.
The first ground of demurrer puts in issue the jurisdiction of a Court of Equity, to set up the Will in the Chancery Court, which was, by the overruling the demurrer, decided in favor of the jurisdiction; and upon this issue, the great contest has been had in this case. We have decided, in the present aspect of this record, that issue was immaterial and ineffectual to the determination of the rights of the parties; and the complainants, as well as the defendants, having largely contributed to the accumulation of unnecessary costs, in this respect, must bear equally the costs of the causes, which have accrued otherwise than those incident to the taking of the account, which will be borne by the defendants.
The bill, as a bill for an account, and as a bill to charge the estate of John Booker, with the assets of the estate of Peter Townsend, Sen., deceased, which fraudulently came into his hands, through his wife, Lucretia, was properly filed; and the account having been regularly taken and confirmed without exceptions, cannot be disturbed here.
But, on a careful consideration of the whole case, and in view of the serious consequences that might arise, from the setting aside of the probate of the Will in the County Court of Sumner County, when the right of the complainants to file their bill in a Court of Equity, to set up this Will, would arise, we feel constrained to remand this cause, and direct that the execution of the decree on the account, be suspended, with *86 leave to the defendants, within three months from the rise of this Court, to take such steps as they may deem necessary, in the County Court of Sumner County, to set aside the probate of the Will; and, on failure to do so, the Chancellor shall proceed to execute the decree, otherwise, the decree shall remain suspended, until the litigation growing out of the proceeding to set aside the probate, shall be terminated.